Filing # 77420103 E-Filed 09/04/2018 11:09:52 PM

IN THE CIRCUIT COURT OF THE
TENTH JUDICIAL CIRCUIT, IN AND
FOR POLK COUNTY, FLORIDA

**SHERRY GROOVER, as personal**
**representative of the estate of JOHN**
**HAMILTON, deceased, for the**
**benefit of his survivors and estate,**
**SHERRY GROOVER, JULIE SUE**
**HAMILTON JACOBY**
**and LOIS FULKERSON,**

**CASE NO.: 18-CA-001577**
**FLA BAR NO.: 0739685**

       **Plaintiffs,**

**v.**

**POLK COUNTY BOARD OF COUNTY**
**COMMISSIONERS; CITY OF WINTER**
**HAVEN, FLORIDA; JASON**
**MONTGOMERY, individually; EMERY**
**ROBERTS, individually; TIMOTHY**
**CHRISTESEN, individually; CORY**
**HART, individually; and JUSTIN RINER,**
**individually,**

       **Defendants.**

_____/

## <u>AMENDED COMPLAINT</u>

    Plaintiffs, SHERRY GROOVER, as personal representative of the estate of JOHN

HAMILTON, deceased, for the benefit of his survivors and estate, JULIE SUE HAMILTON

JACOBY and LOIS FULKERSON, hereby sue Defendants, POLK COUNTY BOARD OF

COUNTY COMMISSIONERS; CITY OF WINTER HAVEN, FLORIDA; JASON

MONTGOMERY, individually; EMERY ROBERTS, individually; TIMOTHY

CHRISTENSEN, individually; CORY HART, individually; and JUSTIN RINER, individually,

and alleges:

## NATURE OF THE ACTION

1.     This is an action brought for the benefit of the survivors and the estate of JOHN

HAMILTON ("Decedent") under Florida common law, Florida's Wrongful Death Act, §768.16,

*et seq.*, Fla. Stats., for intentional tort resulting in death, for manslaughter as described in

§782.07, Fla. Stats.; under 42 U.S.C. §1983, for Defendants' violations of Decedent's rights

under the Fourth Amendment to the United States Constitution, applicable to states and state

agencies through the Fourteenth Amendment; and under Article 1 Section 12 of the Florida

Constitution.

2.     This is an action for claims which are, individually, in excess of fifteen thousand

dollars ($15,000), exclusive of costs and interest.

3.     All events pertinent to this action took place in Polk County, Florida.

## PARTIES

4.     At the time of his death, Decedent was a resident of Polk County, Florida.

Plaintiff, SHERRY GROOVER, brings this action as personal representative of the Decedent's

estate, for the benefit of his survivors and estate. Decedents survivors include his mother, Lois

Fulkerson and Julie Sue Hamilton Jacoby.  This action is also brought by Sherry Groover

(Decedent's sister)  Louis Fulkerson (Decedent's mother) and Julie Sue Hamilton Jacoby

(Decedent's daughter), individually.

5.     At all times pertinent hereto, Defendant, POLK COUNTY BOARD OF

COUNTY COMMISSIONERS ("the County"), has been organized and existing under the laws

of Florida, and has operated a fire department known as the Polk County Fire Rescue

Department, located in Bartow, Florida.

6.      At all times pertinent hereto, Defendant, CITY OF WINTER HAVEN, FLORIDA ("the City"), has been organized and existing under the laws of Florida and has operated a fire department known as the Winter Haven Fire Department, located in Winter Haven, Florida.

7.      At all times pertinent hereto, Defendant, JASON MONTGOMERY, has been a resident of Florida and employed by Defendant City as a firefighter/EMT. He is sued in his individual capacity and is *sui juris*.

8.      At all times pertinent hereto, Defendant, EMERY ROBERTS, has been a resident of Florida and employed by Defendant County as a firefighter/EMT. He is sued in his individual capacity and is *sui juris*.

9.      At all times pertinent hereto, Defendant, TIMOTHY CHRISTENSEN, has been a resident of Florida and employed by Defendant County as a firefighter/EMT. He is sued in his individual capacity and is *sui juris*.

10.     At all times pertinent hereto, Defendant, CORY HART, has been a resident of Florida and employed by Defendant City as a firefighter/EMT. He is sued in his individual capacity and is *sui juris*.

11.     At all times pertinent hereto, Defendant, JUSTIN RINER (collectively with Defendants MONTGOMERY, ROBERTS, CHRISTENSEN, and Hart, "the Individual Defendants"), has been a resident of Florida and employed by Defendant City as a lieutenant. He is sued in his individual capacity and is *sui juris*.

## CONDITIONS PRECEDENT

12.     All conditions precedent to the bringing of this action have been fulfilled.

3

## STATEMENT OF ULTIMATE FACTS

13.    On May 3 2014, Decedent suffered a heart attack while at the home he shared with his mother, Lois Fulkerson. Fulkerson called 911.

14.    The conversation between Fulkerson and one or more 911 operators was recorded, and on the recording, Decedent can be heard in the background, confirming that he was alive at 5:23 am on May 3, 2014.

15.    Defendants MONTGOMERY and HART, both of whom are employed by the Defendant City, arrived on the scene either first or second, as discussed below, around 5:32 am. Defendants CHRISTENSEN and ROBERTS, who are employed by Defendant County, arrived around the same time, i.e., 5:32 am, either just before or just after Defendants MONTGOMERY and HART. Defendant RINER, employed by Defendant City and the supervisor of Defendants MONTGOMERY and HART, arrived after the other Individual Defendants referenced above.

16.    There was never an attempt to revive Decedent by any of the Individual Defendants or by any other representatives of Defendants County and City, and Decedent was declared dead at the scene at 5:36 am.

17.    At some point following Decedent's death, Fulkerson received by mail one or more bills for services rendered by Defendants County and City in delivering/attempting to deliver emergency medical services to Decedent. Plaintiffs are not currently in possession of copies of such bills. On information and belief, Defendants County and City are themselves parties to a contract determining a fee-sharing arrangement in connection with such emergency medical services.

18.    Defendants failed to take action to save Decedent's life. They failed to follow protocol and/or failed to exercise the appropriate standards of care—both for ordinary non-

4

professional actions/inactions and for actions/inactions taken or not taken as medical

professionals--by, for example, failing to intubate Decedent after arriving on the scene, failing to

perform CPR, failing to inject Decedent, and failing to take other appropriate measures to save

Decedent's life.

19.     Upon their arrival and up to and including the moment Decedent was declared

dead, despite the fact that Decedent has been alive only minutes earlier, Defendants reported

signs of lividity and rigor mortis. On information and belief, it takes at least a full hour following

death for these conditions to manifest themselves.

20.     On information and belief, it would have been impossible for these conditions to

have been present at 5:36 am when Decedent was alive at least as of 5:23 am, which was only

thirteen minutes before Decedent was pronounced dead.

21.     Moreover, a crime scene technician employed by Defendant City examined

Decedent's body at 6:13 am, and determined that rigor mortis had not set in.

22.     A report prepared by an employee of Defendant County states, "CPR initially

started by fire…" and "it was seen that PT had been down for a period of time, PT was cold, and

lividity noted on posterior back, and PT was starting to go into riggers [sic]." This report, and

others, shows attempts at medical treatment after Decedent had been pronounced dead, obviously

modified after the fact to cover up the failure of Defendants to treat Decedent, and to cover up

their intentional, reckless, and/or negligent failure to care for Decedent in accordance with

established protocols and in the exercise of the appropriate standards of care.

23.     In truth, no one employed by Defendants County or City attempted CPR on

Decedent, Decedent was not cold, rigor mortis had not set in, and lividity had not begun when

Defendants arrived at the scene.

5

24.     Further, a written narrative prepared by Defendant RINER, an employee of Defendant City, states that "FF Montgomery made Pt contact and initiated Pt care. There was no pulse found and CPR was initiated." However, this never occurred.

25.     The run report was reviewed by an outside source who is an EMS medical supervisor in another Florida county. That reviewer has reported that "[a]fter a careful review of the EMS run report, I found several issues that questioned the paramedic's treatment. According to the agencies provided [sic] protocols, I believe the paramedic did not follow the appropriate protocol," and "the patient should have been treated in accordance with the pulseless electrical activity protocol."

26.     In addition, Defendant City claims to have been the first medical personnel to arrive on scene, thus arriving before Defendant County, when Defendant County has stated that its personnel arrived first.

27.     Moreover, Defendants also claimed to have performed an EKG on Decedent; however, no EKG was actually performed and/or such a procedure was insufficiently performed. Further, there are no EKG strips that have ever been located or identified to match Decedent, as confirmed by the Polk County District Medical Examiner, Stephen J. Nelson, M.D., on June 22 2016.

28.     Plaintiffs and others requested documentation showing that protocols and procedures were followed by Defendants, such as the existence of EKG strips. However, only false, inconsistent and/or no documentation was provided by Defendants shortly after such requests.

29.    Subsequently, Defendants provided EKG strips that they claimed were related to one or more EKGs performed on Decedent. But these strips do not contain Decedent's name and do not appear to be related to any EKG performed on Decedent.

30.    In addition, Mike Lunsford, a representative of Defendant County, claimed the delay in providing the EKG strips to Decedent's sister, Plaintiff GROOVER, was due to the strips being found in the billing department. These strips, which were allegedly found in the billing department, did not contain Decedent's name and do not appear to be related to Decedent, which is part of the continuing cover up of Defendants' failures to do anything to save Decedent's life.

31.    Defendants have not only attempted to cover up their actions and inactions around the time of Decedent's death but have consistently continued to do so since that time, even subsequent to the filing of this action.

32.    For example, when an investigator with Defendant County, Kelli Collins, conducted an investigation into the events surrounding Decedent's death and Defendants' actions and inactions in connection therewith, she interviewed approximately eight people. However, she did not interview Tenth Judicial Circuit Medical Examiner Stephen J. Nelson, MD, or Defendant City's detective Nunnery, both of whom had information to provide that would have been, at the very least, relevant to the investigation.

33.    Upon information and belief, Collins did not interview Nelson and Nunnery because both would have stated that EKG strips were not used on Decedent as required and as claimed in the various reports provided by Defendants.

34.    On the other hand, Collins interviewed two employees or agents of Defendant City who had not even prepared a report regarding the May 3 2014 events.

7

35.    For example, Collins interviewed Brad Calloway, a police officer in the employ of Defendant City, who claims to have been on the scene around the time of Decedent's death and claimed to be able to provide much information regarding the event. Calloway, despite not filing a report of the incident, purported to provide detailed information, such as the "fact" that Decedent was provided oxygen. In reality, no oxygen was ever provided and no report has ever been prepared by Calloway, despite his alleged intimate involvement and/or knowledge of the events that transpired at the time of and just following Decedent's death.

36.    As another example of Defendants' efforts to cover up their wrongful actions and inactions, Collins requested a copy of the audio recording of the 911 call made by Fulkerson. In response, five (5) months later, in October of 2014, Collins received an email from an employee of the Polk County Sheriff's Office stating that she was finally able to locate the audio recording and attributed the delay to the recording have been placed in the recycle bin of a computer instead of within the file regarding Decedent as it should have been.

37.    Protocols require that a copy of a 911 call be readily available for a period of one year following an incident. Thus, when the 911 call--which upon information and belief Defendants had tried to dispose of--was eventually received by Collins after a period of approximately five months, the required year-long storage period was nowhere near expiration, and the 911 call should not have been in the recycle bid.

38.    By way of another example of Defendants' attempts to cover up their actions and inactions, Defendant HART stated, "we saw he was in cardiac arrest and did CPR." At the very least, this statement, made after-the-fact, is inconsistent with Defendants' claim that Decedent was cold and in rigor mortis upon their arrival. Other inconsistencies include the timing of events set forth in various after-the-fact records created by Defendants.

8

39.      Defendants also, at least to some extent, tried to paint the circumstances surrounding Decedent's death as being a homicide against him by his mother. Instead of following protocol and responding to Decedent's medical needs, Defendants treated Decedent's and Fulkerson's residence as if it were a crime scene. This treatment was claimed to have been based on the fact that Fulkerson's hand appeared swollen when Defendants arrived on scene. However, given Fulkerson's age and her having called 911 based on her adult son's apparent heart attack, the only sensible interpretation of such condition would have been that it resulted from her efforts to assist Decedent while waiting for Defendants to arrive on scene.

40.      Upon information and belief, Defendants were involved in a conspiracy to cover up their wrongful actions and inactions.

41.      Plaintiffs have retained the undersigned to represent their interests in this cause and are obligated to pay a fee for these services. Defendants should be made to pay said fee, along with costs incurred in connection with this action, under applicable law.

## COUNT I-WRONGFUL DEATH
### (on behalf of Plaintiffs against Defendants County and City)

42.      Paragraphs 1-40 above are re-alleged and incorporated.

43.      This count sets forth claims on behalf of Plaintiffs against Defendants County and City for wrongful death, brought under §768.16 *et seq.*, Fla. Stats. This count is pled in the alternative, and for purposes of this count, at pertinent times, one or more of Defendant County's employees, and one or more of Defendant City's employees, was acting within the scope of his, her or their employment.

44.      Defendants County and City caused the death of Decedent, intentionally, recklessly or negligently, in violation of §768.16 *et seq.*, Fla. Stats.

45.     The acts of these Defendants were the proximate cause and direct cause of the death of Decedent.

46.     Plaintiffs seeks all wrongful death damages allowable under §768.21, Fla. Stats., for the benefit of Decedent's estate and statutory survivors. Plaintiffs are also entitled to equitable relief under this count.

## COUNT II-WRONGFUL DEATH
### (on behalf of Plaintiffs against the Individual Defendants)

47.     Paragraphs 1-40 above are re-alleged and incorporated.

48.     This count sets forth claims on behalf of Plaintiffs against the Individual Defendants for wrongful death, brought under §768.16 *et seq*., Fla. Stats. This count is pled in the alternative, and for purposes of this count, at pertinent times the Individual Defendants were acting outside the scope of their employment.

49.     The Individual Defendants caused the death of Decedent, intentionally, recklessly or negligently, in violation of §768.16 *et seq*., Fla. Stats.

50.     The acts of these Defendants were the proximate cause and direct cause of the death of Decedent.

51.     Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stats., for the benefit of Decedent's estate and statutory survivors. Plaintiffs are also entitled to equitable relief and to punitive damages under this count.

## COUNT III-WRONGFUL DEATH-MANSLAUGHTER
### (on behalf of Plaintiffs against Defendants County and City)

52.     Paragraphs 1-40 above are re-alleged and incorporated.

53.     This count sets forth claims on behalf of Plaintiffs against Defendants County and City for wrongful death-manslaughter, brought under §768.16 *et seq*., Fla. Stats., and under

10

§782.07, Fla.Stats. (manslaughter), actionable under §95.11(10), Fla. Stats. This count is pled in the alternative, and for purposes of this count, at pertinent times, one or more of Defendant County's employees, and one or more of Defendant City's employees, was acting within the scope of his, her or their employment.

54.     Defendants County and City caused the death of Decedent, intentionally, recklessly or negligently, in violation of §768.16 *et seq.*, Fla.Stats., and of §782.07, Fla. Stats.

55.     The acts of these Defendants were the proximate cause and direct cause of the death of Decedent.

56.     Plaintiffs seek all wrongful death damages allowable under §768.21, Fla.Stats., and under §782.07, Fla. Stats., for the benefit of Decedent's estate and statutory survivors. Plaintiffs are also entitled to equitable relief under this count.

## COUNT IV-WRONGFUL DEATH
### (on behalf of Plaintiffs against the Individual Defendants)

57.     Paragraphs 1-40 above are re-alleged and incorporated.

58.     This count sets forth claims on behalf of Plaintiffs against the Individual Defendants for wrongful death, brought under §768.16 *et seq.*, Fla. Stats., and under §782.07, Fla Stats. (manslaughter), actionable under §95.11(10), Fla. Stats. This count is pled in the alternative, and for purposes of this count, at pertinent times the Individual Defendants were acting outside the scope of their employment.

59.     The Individual Defendants caused the death of Decedent, intentionally, recklessly or negligently, in violation of §768.16 *et seq.*, Fla.Stats., and of §782.07, Fla. Stats.

60.     The acts of these Defendants were the proximate cause and direct cause of the death of Decedent.

11

61.     Plaintiffs seek all wrongful death damages allowable under §768.21, Fla. Stats., and under §782.07, Fla. Stats., for the benefit of Decedent's estate and statutory survivors. Plaintiffs are also entitled to equitable relief and to punitive damages under this count.

### COUNT V-DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (on behalf of Plaintiffs against Defendants County and City)

62.     Paragraphs 1-40 above are re-alleged and incorporated.

63.     This count sets forth claims on behalf of Plaintiffs against Defendants County and City for deliberate indifference to serious medical needs in violation of the Fourth Amendment to the United States Constitution, applicable to these Defendants through the Fourteenth Amendment, and brought through 42 U.S.C. §1983; and in violation of Article 1 Section 12 of the Florida Constitution.

64.     At all times material, Defendants County and City had a duty under the Fourth and Fourteenth Amendments to the Constitution of the United States, and under Article 1 Section 12 of the Florida Constitution, to provide adequate medical care to their citizens, including Decedent, in the confines of their jurisdictional areas.

65.     At all times material, Defendants County and City had duties under the Fourth and Fourteenth Amendments, applicable through 42 U.S.C. §1983, and under Article 1 Section 12 of the Florida Constitution, not to be deliberately indifferent to the known serious medical needs of citizens such as Decedent.

66.     On the date Defendants County and City responded to his residence, Decedent suffered from a serious medical need/condition, which need/condition was ignored.

67.     Defendants County and City were deliberately indifferent to Decedent's medical needs. Defendants County and City were aware of Decedent's serious medical needs, and it was

12

impossible for any reasonable person not to have noticed them, if not for conscious and wanton disregard.

68.     Defendants County and City were aware that Decedent was at a risk of serious harm, such as death, if he did not receive prompt medical care and/or treatment.

69.     Decedent's medical diagnosis and condition or conditions were known or knowable to Defendants County and City at all times material hereto.

70.     Despite the actual or imputed knowledge of the serious risk to Decedent's health, Defendants County and City intentionally, or through deliberate indifference, failed or refused to provide Decedent with access to medical care requested by Fulkerson via her 911 call.

71.     Had Defendants County and City ensured that Decedent was properly treated in a timely manner, Decedent may have lived.

72.     Final policymakers and/or delegated final policymakers of Defendants County and City, including without limitation the Individual Defendants, made the decisions about Decedent's health, which decisions violated the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article 1 Section 21 of the Florida Constitution. Defendants County and City are persons under applicable law.

73.     Defendants County and City are liable to Plaintiffs because through identified final policymakers, including the Individual Defendants, these Defendants made abhorrent decisions about Decedent's medical care or lack thereof, because there was deliberate indifference in the training of medical personnel and/or first responders, and/or because these Defendants ratified the actions of the final policymakers and/or others within their control and failed to take action against them and/or to ensure the proper medical care after notice.

13

74.     As a direct, proximate, and foreseeable result of Defendants County's and City's deliberate indifference to Decedent's known serious medical needs, Plaintiffs have suffered the injuries described in this complaint, including pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other tangible and intangible damages. These injuries and losses have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiffs are also entitled to equitable relief under this count.

### COUNT VI-DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
### (on behalf of Plaintiffs against the Individual Defendants)

75.     Paragraphs 1-41 above are re-alleged and incorporated.

76.     This count sets forth claims on behalf of Plaintiffs in both capacities against the Individual Defendants for deliberate indifference to serious medical needs under the Fourth Amendment to the U.S. Constitution, applicable to these Defendants through the Fourteenth Amendment to the U.S. Constitution, and are brought through 42 U.S.C. §1983; and under Article 1 Section 12 of the Florida Constitution.

77.     At all times material, the Individual Defendants had duties under the Constitutions of the United States and of Florida to provide adequate medical care to their citizens, including Decedent, in the confines of their jurisdictional areas.

78.     At all times material, the Individual Defendants had duties under the Fourth and Fourteenth Amendments, applicable through 42 U.S.C. §1983, and under Article 1 Section 12 of the Florida Constitution, not to be deliberately indifferent to the known serious medical needs of citizens such as Decedent.

79.     On the date the Individual Defendants responded to his residence, Decedent suffered from a serious medical need/condition that was ignored.

14

80.     The Individual Defendants were deliberately indifferent to Decedent's medical needs. The Individual Defendants were aware of Decedent's serious medical needs and it was impossible for any reasonable person not to have noticed them, if not for conscious and wanton disregard.

81.     The Individual Defendants were aware that Decedent was at risk of serious harm, such as death, if he did not receive prompt medical care and/or treatment.

82.     Decedent's medical diagnosis and condition or conditions were known or knowable to the Individual Defendants at all times material hereto.

83.     Despite the actual or imputed knowledge of the serious risk to Decedent's health, the Individual Defendants intentionally or through deliberate indifference, failed or refused to provide Decedent with access to medical care requested by Fulkerson via her 911 call.

84.     Had the Individual Defendants ensured that Decedent was properly treated in a timely manner, Decedent may have lived.

85.     The Individual Defendants made the decisions about Decedent's health, which decisions violated the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1 Section 12 of the Florida Constitution.

86.     The Individual Defendants are liable to Plaintiffs because they made the abhorrent decisions about Decedents' medical care or the lack thereof.

87.     As a direct, proximate, and foreseeable result of the Individual Defendants' deliberate indifference to Decedent's known serious medical needs, Plaintiffs have suffered the injuries described in this complaint, including pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other tangible and intangible damages. These injuries and losses have occurred in the past, are occurring at present, and likely will

15

continue into the future. Plaintiffs are also entitled equitable relief and to punitive damages under this count.

## COUNT VII-COMMON LAW CIVIL CONSPIRACY
### (on behalf of Plaintiffs against the Individual Defendants)

88.   Paragraphs 1-41 above are re-alleged and incorporated.

89.   This count sets forth claims on behalf of Plaintiffs against the Individual Defendants for civil conspiracy brought under the common law of Florida. This count is pled in the alternative, and for purposes of this count, each of the Individual Defendants was acting outside the scope of his employment.

90.   The Individual Defendants acted as conspirators to cause and then conceal the death of Decedent. Thus, the underlying actionable torts or other actions, which constituted the purposes of the conspiracy, were wrongful death, wrongful death by way of manslaughter, and deliberate indifference to serious medical needs.

91.   Alternatively, Defendants are liable for the tort of civil conspiracy, standing alone, based upon the exceptional circumstances surrounding the facts of this case which have led to the instant action.

92.   The term of the conspiracy commenced immediately prior to the death of Decedent and is still ongoing.

93.   The conspiracy among the Individual Defendants was a conspiracy to do one or more unlawful acts by unlawful means.

94.   Each of the Individual Defendants engaged in overt acts in furtherance of the conspiracy, as described above.

16

95.    The damage to Plaintiffs is a violation of her constitutional protections under the Fourth and Fourteenth Amendments of the United States Constitution, and under Article I Section 12 of the Florida Constitution.

96.    The damage to Decedent, as a result of the conspiracy, was his death or murder. Plaintiffs have been damaged as set forth above.

97.    As a direct, proximate, and foreseeable result of the Individual Defendants' deliberate indifference to Decedent's known serious medical needs, Plaintiffs have suffered the injuries described in this complaint, including pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other tangible and intangible damages. These injuries and losses have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiffs are also entitled equitable relief and to punitive damages under this count.

### COUNT VIII-CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
### (on behalf of Plaintiffs against the Individual Defendants)

98.    Paragraphs 1-41 above are re-alleged and incorporated.

99.    This count sets forth claims on behalf of Plaintiffs against the Individual Defendants for conspiracy to violate Plaintiffs' constitutional rights, because they intentionally and unlawfully were in deliberate indifference to Decedent's serious medical needs in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and of Article 1 Section 12 of the Florida Constitution, and is brought through 42 U.S.C. §1983.

100.    In the course of the foregoing, the Individual Defendants entered into a conspiracy to be in deliberate indifference to Decedent's serious medical needs, and then to conceal such actions/inactions.

17

101.    On information and belief, the Individual Defendants, along with other employees and/or agents of Defendants County and City, acting under color of state law, caused to be done an act or acts in furtherance of the object of a conspiracy and acted in concert to undertake a course of conduct violative of Decedent's and Plaintiffs' constitutional rights.

102.    Specifically, the Individual Defendants conspired to deprive Decedent and Plaintiffs of their constitutional rights by being deliberately indifferent to his serious medical needs, and then to conceal such actions/inactions

103.    As a direct, proximate, and foreseeable result of the Individual Defendants' deliberate indifference to Decedent's known serious medical needs, Plaintiffs have suffered the injuries described in this complaint, including pain and suffering, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other tangible and intangible damages. These injuries and losses have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiffs are also entitled equitable relief and to punitive damages under this count.

## COUNT IX-COMMON LAW NEGLIGENCE
### (on behalf of Plaintiffs against Defendants County and City)

104.    Paragraphs 1-40 above are re-alleged and incorporated.

105.    This count sets forth claims on behalf of Plaintiffs against Defendants County and City for common law negligence and is based on claims that arose during Decedent's medical emergency and thereafter.

106.    Defendants County and City knew or should have known that Decedent was within a zone of risk related to contact with Defendants' agents/employees.

18

107.    Upon Decedent's medical emergency and the circumstances related to same, legal duties devolved upon Defendants County and City because Decedent and Plaintiffs were in foreseeable zones of risk to be harmed by their actions and inactions.

108.    These duties arose from the fact that Decedent was under Defendants County's and City's care pursuant to applicable law.

109.    These duties arose because of the special relationships that arose between Defendants County and City and Decedent, and/or because the damages to Decedent and Plaintiff were within foreseeable zones of risk created upon and following Decedent's medical emergency.

110.    Once Fulkerson placed the 911 call, Decedent and Plaintiffs were in foreseeable zones of risk, and such duties of care arose. Alternatively, because of the nature of the relationship between Defendants County and City and Decedent, there was a special relationship with Decedent.

111.    No medical or professional expertise was required on the part of Defendants County's and City's employees in order to be aware of Decedent's severe medical condition, and his need for medical access and services. Thus, these Defendants' knowledge of Decedent's condition and needs was obtained through employees/agents acting in non-medical capacities.

112.    The common law negligence subject of claims set forth in this count is ordinary negligence in the performance custodial duties and in the making of decisions not to provide medical assistance, and not negligence or vicarious liability for negligence in the provision of professional medical services.

19

113.    The proximate cause of Decedent's and Plaintiffs' damages was Defendants County's and City's negligence set forth above, and therefore such negligence was the legal cause of Decedent's and Plaintiffs' damages.

114.    The actions of Defendants County and City complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

115.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs have sustained economic damages, including emotional pain, anguish, humiliation, insult, indignity, loss of enjoyment of life, lost companionship, inconvenience and hurt, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present and will likely continue into the future.  Plaintiffs are entitled to equitable/injunctive relief and compensatory damages under this count. Defendants County and City are jointly and severally liable under this count.

### COUNT X-PROFESSIONAL NEGLIGENCE
### (on behalf of Plaintiffs capacities against all Defendants)

116.    Paragraphs 1-40 above are re-alleged and incorporated.

117.    This count sets forth claims on behalf of Plaintiffs against all Defendants for professional negligence in violation of the applicable standard of care and is based on claims that arose during Decedent's medical emergency and thereafter.

118.    Defendants knew or should have known that Decedent was within a zone of risk related to contact with Defendants' agents/employees. Defendants had a duty to perform emergency medical services, did so negligently, and failed to satisfy the pertinent standard of care.

20

119.    Upon Decedents' medical emergency and the circumstances related to same, and also upon Defendants' arrival on the scene and approach of Decedent to evaluate his conditions, professional duties arose and a standard of care applicable to medical professionals devolved upon Defendants because Decedent and Plaintiffs were in foreseeable zones of risk to be harmed by their actions and inactions.

120.    These duties arose, in whole or in part, from the fact that Decedent was under Defendants' care pursuant to applicable law, and also because Defendants undertook the treatment of Decedent.

121.    These duties also arose because of the special relationships that arose between Defendants and Decedent as medical care givers and patient, and/or because the injuries to Decedent and Plaintiffs were within foreseeable zones of risk created upon and following Decedent's medical emergency.

122.    Once Fulkerson placed the 911 call, Decedent and Plaintiffs were in foreseeable zones of risk, and such duties of care arose. Alternatively, because of the nature of the relationship between Defendants and Decedent, there was a special relationship with Decedent.

123.    The proximate cause of Decedent's and Plaintiffs' damages was Defendants' professional negligence set forth above, and therefore such professional negligence was the legal cause of Decedents' and Plaintiffs' damages.

124.    The actions of Defendants complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

125.    As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs have sustained economic damages, including sustained emotional pain, anguish,

21

humiliation, insult, indignity, loss of enjoyment of life, lost companionship, inconvenience and hurt, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present and will likely continue into the future. Plaintiffs are entitled to equitable/injunctive relief and compensatory damages under this count, and to punitive damages against the Individual Defendants. Defendants are jointly and severally liable under this count.

## COUNT XI-COMMON LAW NEGLIGENT HIRING
### (on behalf of Plaintiffs against Defendants County and City)

126.    Paragraphs 1-40 above are realleged and incorporated.

127.    This count sets forth claims on behalf of Plaintiffs against Defendants County and City for common law negligent hiring. This count is pled in the alternative, and for purposes of this count, at all pertinent times, some or all of Defendant County's employees/agents, and some or all of Defendant City's employees/agents were acting within the course and scope of their employment.

128.    The actions of Defendants County and City complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

129.    The duties of care owed by Defendants County and City to Plaintiffs included the duty to independently vet and investigate prior to hire its employees/agents involved in the delivery of emergency medical services and/or involved in the supervision of other employees so involved, specifically including the Individual Defendants, and to confirm their fitness for employment in their roles, and in the context of unfitness not to hire or contract with such employees/agents. Decedent and Plaintiffs were in a foreseeable zone of risk, and this duty of care arose.

22

130.    On information and belief, prior to their employment, Defendants County and City breached their duty of care to Decedent and Plaintiffs by negligently failing to independently vet and investigate their employees/agents involved in the delivery of emergency medical services and/or their employees/agents involved in the supervision of other employees so involved, and in negligently failing to confirm their fitness for employment in such roles. Had Defendants County and City conducted independent investigations prior to such hirings, they would have known that these employees/agents, on information and belief, had committed similar acts in the past, or were otherwise unfit to be hired.

131.    Defendants County and City had legal duties and responsibilities to learn the pertinent facts concerning these candidates' character and fitness for duty, and their obtaining the necessary information would not have created undue hardship on them.

132.    Defendants County and City breached their duties to hire employees who were fit for the duties they performed.

133.    As a direct and proximate result of the unlawful acts and omissions of Defendants County and City, set forth in part above, Decedent and Plaintiffs have been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and are likely to continue into the future. Plaintiffs are also entitled to equitable/injunctive relief under this count.

### COUNT XII-COMMON LAW NEGLIGENT RETENTION
**(on behalf of Plaintiffs against Defendants County and City)**

134.    Paragraphs 1-40 above are re-alleged and incorporated.

23

135.     This count sets forth claims on behalf of Plaintiffs against Defendants County and City for common law negligent retention. This count is pled in the alternative, and for purposes of this count, at all pertinent times, some or all of Defendant County's employees/agents, and some of or all of Defendant City's employees/agents, were acting within the course and scope of their employment.

136.     The actions of Defendants County and City complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

137.     The duties of care owed by Defendants County and City to Decedent and Plaintiffs included the duty to monitor the actions, inactions, and overall performance of their employees/agents subsequent to hire, to make themselves aware of such employees'/agents' fitness or unfitness to act properly under the law, without violating the rights of persons such as Decedent and Plaintiffs and in the context of unfitness take remedial actions, including but not limited to discharge.

138.     Decedent and Plaintiffs were in foreseeable zones of risk, and this duty of care arose.

139.     On information and belief, Defendants County and City breached their duties of care to Decedent and Plaintiffs by negligently failing to monitor the actions, inactions, and overall performance of their employees/agents, by their negligent failure to make themselves aware of the fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Decedent and Plaintiffs, and/or by their negligent failure to take remedial actions, including but not limited to discharge, when they were aware or should

24

have been aware of such employees'/agents' unfitness, and such employees and/or agents then acted in connection with Decedent and Plaintiffs.

140.   As a direct and proximate result of the unlawful acts and omissions of Defendants County and City, set forth in part above, Plaintiffs have been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiffs are also entitled to injunctive/equitable relief under this count.

### COUNT XIII-COMMON LAW NEGLIGENT TRAINING
### (on behalf of Plaintiffs against Defendants County and City)

141.   Paragraphs 1-40 above are re-alleged and incorporated.

142.   This count sets forth claims on behalf of Plaintiffs against Defendants County and City for common law negligent training. This count is pled in the alternative, and for purposes of this count, at all pertinent times, some or all of Defendant County's employees/agents, and some or all of Defendant City's employees/agents, were acting within the course and scope of their employment.

143.   The actions of Defendants County and City complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

144.   The duties of care owed by Defendants County and City to Decedent and Plaintiffs included the duty to properly train their employees/agents, and specifically to implement and operate training programs so as to train employees/agents involved in the

2018CA-001577-0000-00       Received in Polk 09/04/2018 11:11 PM

delivery of emergency medical services, and/or with the supervision of other employees so involved. Decedent and Plaintiffs were in foreseeable zones of risk, and these duties of care arose.

145.    On information and belief, Defendants Count and City breached their duties of care to Decedent and Plaintiffs by negligently implementing or operating their training programs with regard to their employees/agents involved in the delivery of emergency medical services and/or in the supervision of other employees who in turn deliver such services, specifically including the Individual Defendants, and/or by delivering no training at all to such employees/agents, who then acted in connection with Decedent and Plaintiffs.

146.    As a direct and proximate result of the unlawful acts and omissions of Defendants County and City, set forth in part above, Decedent and Plaintiffs have been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are continuing at present, and will likely continue into the future. Plaintiffs are also entitled to injunctive/equitable relief under this count.

### COUNT XIV-COMMON LAW NEGLIGENT SUPERVISION
### (on behalf of Plaintiffs against Defendants County and City)

147.    Paragraphs 1-40 above are re-alleged and incorporated.

148.    This count sets forth claims on behalf of Plaintiffs against Defendants County and City for common law negligent supervision. This count is pled in the alternative, and for purposes of this count, at all pertinent times, some or all of Defendant County's employees/agents, and some or all of Defendant City's employees/agents, were acting within the course and scope of their employment.

26

149.    The actions of Defendants County and City complained of in this count were taken in the performance of "operational" functions, i.e., functions that are not necessary to or inherent in policymaking or planning, and which merely reflect secondary decisions as to how existing policies or plans will be implemented.

150.    The duties of care owed by Defendants County and City to Decedent and Plaintiffs included the duty to properly supervise their employees/agents, and specifically to observe and monitor the actions, inactions, and overall performance of their employees/agents involved in the delivery of emergency medical services and/or in connection with the supervision of other employees so involved, to make itself aware of its employees'/agents' professional difficulties and the fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Decedent and Plaintiffs, and in the context of difficulties or unfitness to take remedial actions, including but not limited to investigation, instruction, and reassignment. Decedent and Plaintiffs were in foreseeable zones of risk, and this duty of care arose.

151.    On information and belief, Defendants County and City breached their duties of care to Decedent and Plaintiffs by negligently failing to monitor the actions, inactions, and overall performance of their employees/agents involved in the delivery of emergency medical services and/or in connection with the supervision of other employees so involved, by their negligent failure to make themselves aware of the difficulties and fitness or unfitness of such employees/agents to act properly under the law, without violating the rights of persons such as Decedent and Plaintiffs, and/or by their negligent failure to take remedial actions, including but not limited to investigation, instruction, and reassignment, when they were aware or should have

27

been aware of such employees'/agents' difficulties and unfitness, and such employees and agents then acted in connection with Decedent and Plaintiffs.

152.    As a direct and proximate result of the unlawful acts and omissions of Defendants County and City, set forth in part above, Decedent and Plaintiffs have been damaged, which damages include physical pain, mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, loss of employment opportunities, lost wages, and loss of other emoluments. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiffs are also entitled to injunctive/equitable relief under this count.

### COUNT XV-BREACH OF CONTRACT
### (on behalf of Plaintiffs against Defendants County and City)

153.    Paragraphs 1-40 above are re-alleged and incorporated.

154.    This count sets forth claims on behalf of Decedent and Plaintiffs against Defendants County and City for breach of contract.   Decedent was a third-party beneficiary to the contracts between Defendants for medical care and services to Decedent.

155.    The contract or contracts between these Defendants and Decedent, and now between these Defendants and Decedent and/or Plaintiffs constitute valid and enforceable contracts.

156.    By their actions and inactions, set forth in part above, Defendants County and City failed to perform obligations under such contract or contracts, and as such breached such contract or contracts by failing to provide emergency medical services and medical services to Decedent.

157.    As a direct and proximate result of Defendants County's and City's actions and inactions subject of this count, Decedent and Plaintiffs have suffered the violation of their

28

constitutional rights, bodily injury and resulting pain and suffering, bodily injury, disfigurement, mental anguish, loss of the capacity for the enjoyment of life and expenses of medical care. Plaintiffs are entitled to equitable/injunctive relief under this count.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants for the following:

(a)     that process issue and this court take jurisdiction over this cause;

(b)     that this court enter judgment against Defendants and for Plaintiffs granting equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiffs;

(c)     that this court enter judgment against Defendants and for Plaintiffs awarding all legally-available general and compensatory damages, including damages for economic loss, to Plaintiffs from Defendants for Defendants' violations of law enumerated herein;

(d)     that this court enter judgment against Defendants and for Plaintiffs permanently enjoining Defendants from future violations of law enumerated herein;

(e)     that this court enter judgment against Defendants and for Plaintiffs awarding Plaintiffs costs and attorney's fees where allowed by law;

(f)     that this court enter judgment against Defendants and for Plaintiffs awarding Plaintiffs interest where appropriate;

(g)     that this court enter judgment against Defendants and for Plaintiffs

        awarding Plaintiffs punitive damages against the Individual Defendants;

        and

(h)     that this court grant such other and further relief as is just and proper under

        the circumstances.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues herein that are so triable.

DATED this 4th day of September, 2018.

                                        Respectfully submitted:

                                        /s/ Marie A. Mattox
                                        Marie A. Mattox [FBN 0739685]
                                        MARIE A. MATTOX, P. A.
                                        310 East Bradford Road
                                        Tallahassee, FL 32303
                                        Telephone:  (850) 383-4800
                                        Facsimile:   (850) 383-4801
                                        marie@mattoxlaw.com
                                        Secondary sources:
                                        michelle@mattoxlaw.com
                                        marlene@mattoxlaw.com

                                        /s/ James Roscoe Tanner
                                        James Roscoe Tanner
                                        Florida Bar No.: 637246
                                        Post Office Box 260156
                                        Tampa, Florida 33615
                                        Telephone: (813) 322-3565
                                        jrt@jrntannerlaw.com
                                        ATTORNEYS FOR PLAINTIFFS

30