## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHERRY GROOVER, as Personal
Representative of the Estate of JOHN
DARRELL HAMILTON, deceased, for
the benefit of his survivors and estate;
SHERRY GROOVER, individually; JULIE
JACOBY; and LOIS FULKERSON,

     Plaintiffs,

v.                           Case No. 8:18-cv-02454-T-02TGW

POLK COUNTY BOARD OF COUNTY
COMMISSIONERS; CITY OF WINTER
HAVEN; JASON MONTGOMERY,
individually: TIMOTHY CHRISTENSEN,
individually; CORY HART, individually; and
JUSTIN RINER, individually,

     Defendants.

_____/

## ORDER

    This matter comes to the Court on Defendants Polk County Board of County

Commissioners ("County"), City of Winter Haven ("City"), Jason Montgomery,

Timothy Christensen, Cory Hart, and Justin Riners' Motions to Dismiss, Dkts. 107,

108, 109 & 110, Plaintiffs Sherry Groover (as representative of the estate of John

Darrell Hamilton), Sherry Groover (individually), Julie Jacoby, and Lois

Fulkersons' Second Amended Complaint. Dkt. 98. Plaintiffs filed responses. Dkts.

113, 114, 115 & 116. With the benefit of full briefing, the Court grants in part and denies in part the Defendants' Motions to Dismiss.

## Statement of the Facts

For this motion, the Court accepts the factual allegations in the Second Amended Complaint as true. Early in the morning on May 3, 2014, John Hamilton suffered a heart attack. Dkt. 98 ¶ 12. Shortly after, his mother, Lois Fulkerson, called for emergency medical services. *Id.* During the call at 5:23 AM, Hamilton could be heard in the background, alive. *Id.* ¶ 14.

Less than ten minutes later, two emergency medical technicians ("EMTs"), Defendant Christensen and Emery Roberts,[1] arrived at the scene. *Id.* ¶ 15. While unclear when, Defendants Montgomery, Hart, and Riner also came to provide medical care to Hamilton. *Id.* ¶¶ 15–16. Emory Roberts declared Hamilton dead on the scene at 5:36 AM. *Id.* ¶ 17. At no point during the less than five-minute window between when EMTs arrived and when Hamilton was declared dead did anyone provide any medical care to Hamilton. *Id.* ¶¶ 15, 17 & 20.

Plaintiffs have since investigated the circumstances of Hamilton's death and discovered discrepancies in official reports about the actions of the EMTs. These discrepancies include things like Defendant Christensen reporting that Hamilton

---

[1] Mr. Roberts has since passed away and is not named as party in Plaintiffs' Second Amended Complaint. *See* Dkt. 98 ¶ 15.

had signs of rigor mortis when he arrived on the scene (something contradicted by later reports) and reports that CPR was done on Hamilton (something contradicted by Plaintiffs own understanding of events). *Id.* ¶¶ 21–25. And after months of seeking to obtain information from an EKG allegedly used on Hamilton when the EMTs arrived to give medical care, on June 22, 2016, the Polk County medical examiner's office told Plaintiffs that no EKG information exists for Hamilton. *Id.* ¶¶ 29–33.

Plaintiffs sued Jason Montgomery, Timothy Christensen, Cory Hart, Justin Riner (collectively, the "Individual Defendants"), the City, and the County, in state court. Dkt. 1. Defendants removed to this Court and Plaintiffs filed an Amended Complaint. Dkt. 2. This Amended Complaint was dismissed without prejudice by this Court and Plaintiffs filed a Second Amended Complaint. Dkts. 90 & 98. Defendants have now moved to dismiss this Second Amended Complaint. Dkts. 107, 108, 109 & 110.

## Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the Court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282,

1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## Discussion

1. <u>Individual Plaintiffs</u>

First, Defendants move to dismiss Plaintiffs Sherry Grover (in her individual capacity), Julie Jacoby, and Lois Fulkerson (collectively, the "Individual Plaintiffs") as improper parties. The Defendants argue that the Individual Plaintiffs lack standing to make the claims they allege. This Court agrees in part.

Plaintiffs must assert their own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of others. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Other than the claims based on wrongful death, the Individual Plaintiffs instead allege claims based on alleged violations of Hamilton's constitutional rights or state law torts. This is not enough to show standing. *See, e.g.*, *Torres v. Orange Cty., Fla.*, No. CIVA6991662CIVORL19B, 2000 WL 35527256, at *1 (M.D. Fla. May 16, 2000) ("[O]nly the purported victim, or his estate's representative(s), may prosecute a section 1983 claim[.]"). Plaintiffs seemingly do not dispute this. *See* Dkt. 116 at 3. So Plaintiffs Sherry Groover (in

her individual capacity), Lois Fulkerson, and Julie Jacoby may only recover under the wrongful death claims.

2. Wrongful Death (Counts 1, 2, 3, 4, 5, and 6) and Manslaughter (7, 8, 9, 10, 11, and 12) Claims:

In twelve separate Counts, Plaintiffs bring wrongful death and wrongful death-manslaughter claims against each of the Defendants. Defendants argue that these claims must be dismissed for various reasons including that the claims were brought outside the applicable statute of limitations, the Florida Good Samaritan Act bars the claims, and sovereign immunity bars the claims. This Court disagrees.

a. Statute of Limitations

As a preliminary point, Defendants contend that all claims for wrongful death are barred by the statute of limitations. More than two years passed between Hamilton's death on May 3, 2014 and the filing of Plaintiffs' claims on May 3, 2018 in state court, which puts these claims outside the applicable statute of limitations. Plaintiffs argue that the statute of limitations was tolled because of actions to conceal the cause of action. But, at least at this point, it is unclear whether the statute of limitations bars these claims or has been tolled.

First, all of the wrongful death claims based on manslaughter brought against the Individual Defendants are not bound by any statute of limitations. "[A]n action for wrongful death . . . brought against a natural person for an

5

intentional tort resulting in death [manslaughter] may be commenced at any time."
Fla. Stat. § 95.11(10). So these claims may proceed.

For the other wrongful death claims there is a two-year statute of limitations.
Fla. Stat. § 95.11(4)(b).[2] But that limitations period begins either when the incident
giving rise to the claim occurred or, in the case of "fraud, concealment, or
intentional misrepresentation of fact prevented the discovery of the injury," when
the claim "is discovered or should have been discovered with the exercise of due
diligence, but in no event to exceed 7 years from the date the incident giving rise to
the injury occurred[.]" *Id.* Plaintiffs allege that they did not discover the claims
until years later because Defendants concealed the facts that gave rise to Plaintiffs
claims. Dkt. 98 ¶ 33. Plaintiffs argue that the statute of limitations should not begin
to run until June 22, 2016—putting this lawsuit within the statute of limitations.

Plaintiffs allege that between Hamilton's death and when they were told an
EKG was not done on Hamilton, Defendants concealed actions that led to

---

[2] Florida Statute § 95.11(4)(b) is the proper statute of limitations for these claims. While Florida
Statute § 95.11(4)(d) provides the statute of limitations for wrongful death actions, medical
negligence wrongful death actions are governed by section 95.11(4)(b). "[B]y defining [in
section 95.11(4)(b)] an 'action for medical malpractice' to include a claim in tort for damages
because of death, the legislature clearly intended this section to apply to wrongful death actions
in cases where the basis for the action is medical [negligence]." *Ash v. Stella*, 457 So. 2d 1377,
1379 (Fla. 1984). Plaintiffs' claims are medical negligence claims and are, therefore, governed
by section 95.11(4)(b). *See Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA
2011) ("[A] claim for medical negligence or malpractice. . . . is one arising out of the rendering
of, or the failure to render, medical care or services.").

Hamilton's death. Dkt. 98 ¶ 33. Plaintiffs contend that, until the confirmation by the Polk County medical examiner's office that an EKG was not done on Hamilton, they were led to believe that an EKG was done. *Id.* ¶¶ 29–30. Plaintiffs argue that this admission by the medical examiner's office that an EKG was not done for Hamilton allowed them to discover the subpar medical care given to Hamilton and was when the statute of limitations began to run then. At this point in the lawsuit Plaintiffs' allegations must be accepted as true; therefore, the wrongful death and manslaughter Counts will not be dismissed for being outside the statute of limitations.

### b.  Merits

Plaintiffs allege two types of wrongful death actions against each of the Defendants: one for "ordinary" wrongful death and the other for wrongful death manslaughter. Wrongful death actions may be brought when the "death of a person is caused by the wrongful act, negligence, default, or breach of contract[.]" Fla. Stat. § 768.19. "Manslaughter may be committed in one of three ways: by act, by procurement, or by culpable negligence." *Pollock v. State*, 64 So. 3d 695, 696 (Fla. 2d DCA 2011). The culpable conduct necessary to sustain proof of manslaughter is conduct of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects[.]" *McCreary v. State*, 371 So. 2d 1024, 1026 (Fla. 1979).

Here, Plaintiffs allege that emergency medical service was called for Hamilton because he suffered a heart attack. When the EMTs (the Individual Defendants) arrived, despite Hamilton allegedly still being alive, they "fail[ed] to intubate [Hamilton] . . . , fail[ed] to perform CPR, fail[ed] to inject [Hamilton], and fail[ed] to take other appropriate measures to save [Hamilton]'s life." Dkt. 98 ¶ 20. Plaintiffs allege that because of this inaction Hamilton died. Accepting these facts as true, the claims for ordinary wrongful death and wrongful death manslaughter are sufficiently pled.

### c. Immunity

Each Defendant also argues that some form of immunity protects them from suit. Under Florida Statute § 768.28(9)(a), state officers, employees, and agents are immune from state lawsuits based on "any act, event, or omission of action in the scope of her or his employment or function[.]" Fla. Stat. § 768.28(9)(a). "The immunity may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Eiras v. Florida.*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (quoting Fla. Stat. § 768.28(9)(a)).

8

Beyond that, if the state agent is a healthcare provider,[3] there is an added

layer of protection from the Florida Good Samaritan Act. Under that act:

> Any healthcare provider . . . providing emergency services . . . shall not
> be held liable for any civil damages as a result of such medical care or
> treatment unless such damages result from providing, or failing to
> provide, medical care or treatment under circumstances demonstrating
> a reckless disregard for the consequences so as to affect the life or
> health of another.

Fla. Stat. § 768.13(2)(b)(1). Reckless disregard is "conduct that a health care

provider knew or should have known . . . created an unreasonable risk of injury so

as to affect the life or health of another, and such risk was substantially greater

than that which is necessary to make the conduct negligent." Fla. Stat. §

768.13(2)(b)(3).

For cities and counties, sovereign immunity usually protects against suits

from individuals. However, Florida Statute § 768.28 waives cities and counties'

sovereign immunity to allow vicarious liability for their employees' and agents'

good-faith actions taken in the course and scope of their employment. Fla. Stat. §

768.28(9)(a). That said, cities and counties still receive sovereign immunity for

torts by their employees or agents "committed while acting outside the course and

scope of his employment or committed in bad faith or with malicious purpose or in

---

[3] Emergency medical technicians and paramedics who are providing emergency medical care within the scope of their employment are considered healthcare providers under Fla. Stat. § 768.13. *See* Fla. Stat. § 401.45.

a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

Defendants, first, argue that the Individual Defendants are protected by the Florida Good Samaritan Act. Yet, accepting all facts pled by Plaintiffs, the Individual Defendants arrived to the scene to perform lifesaving care while Hamilton was still alive but "fail[ed] to intubate [Hamilton] . . . , fail[ed] to perform CPR, fail[ed] to inject [Hamilton], and fail[ed] to take other appropriate measures to save [Hamilton]'s life." Dkt. 98 ¶ 20. The Florida Good Samaritan Act does not protect those who "provid[e], *or fail[] to provide*, medical care or treatment under circumstances demonstrating a reckless disregard for the consequences so as to affect the life or health of another." Fla. Stat. § 768.13(2)(b)(1) (emphasis added). At this stage of the proceedings, this is enough to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Defendants also argue that any liability for the Individual Defendants would preclude liability for the County and City. Defendants argue that, under the Florida Good Samaritan Act, if the Individual Defendants are liable for Hamilton's death then they must have "demonstrate[ed] a reckless disregard for the consequences so as to affect the life or health of another." Dkt. 107 at 10. Yet for the County or City to be vicariously liable the Individual Plaintiffs must have been acting within the scope of their employment and not with "reckless disregard for the consequences

10

to [Hamilton's] life." *Id.* at 10–12. Defendants argues that this logically precludes wrongful death claims against the County and City.

But Plaintiffs can plead claims in the alternative. *See* Fed. R. Civ. P. 8(d)(2). If the Individual Defendants were merely negligent, then they are immune from suit and only the County and City could be liable. *See* Fla. Stat. § 768.28(9)(a) ("The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity[.]"). But if the Individual Defendants acted outside the scope of their employment or "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" then sovereign immunity would protect the County and City but not the Individual Defendants. *Eiras*, 239 F. Supp. 3d at 1343 (citation omitted). While the County, City, and the Individual Defendants could not all be found liable for wrongful death, at this point in the lawsuit it is too early to tell which, if any, presents a cognizable claim. So Plaintiffs' wrongful death claims against the County, City, and Individual Defendants (Counts 1–12) may proceed.

3.  Negligent Training, Hiring, Retention, and Supervision Claims (Counts 29, 30, 31, 32, 33, 34, 35, and 36)

Defendants next move to dismiss Plaintiffs' claims against the City and County for negligent hiring (Counts 29 & 33), retention (Counts 30 & 34), training

11

(Counts 31 & 35), and supervision (Counts 32 & 36). Defendants argue that each count has been either improperly pled or is barred by sovereign immunity. This Court will address each in turn.

Defendants first argue that Plaintiffs have failed to state a claim that they were negligent in hiring the Individual Defendants. To state a claim for negligent hiring under Florida law, a plaintiff must allege facts showing that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (citation omitted). In other words, the inquiry focuses on the "reasonable foreseeability" of the harm that did actually occur. *Id.*

Here, Plaintiffs' allegations are insufficient to state a negligent hiring claim. The Complaint does not allege any facts that would plausibly suggest the County or City was on notice of, or reasonably could have foreseen, any harmful propensities or unfitness for employment of any of the Individual Defendants. *See Duquesne v. City of Miami Beach*, No. 1:12cv20575, 2012 WL 3061603, at *10 (S.D. Fla. July 26, 2012) (dismissing negligent hiring claim based on lack of allegations about "any incidents from the [employee's] history before being hired"). Plaintiffs' Second Amended Complaint merely alleges that the Individual

Defendants "committed similar acts in the past or were otherwise unfit to be hired." Dkt. 98 ¶ 287. This vague allegation alone is insufficient to "state a claim to relief that is plausible on its face." *See Iqbal*, 556 U.S. at 678. So Counts 29 and 33 must be dismissed.

Defendants also argue Plaintiffs have failed to state a claim for negligent retention or supervision. Different from negligent hiring, "[n]egligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Degitz v. S. Mgmt. Servs., Inc.*, 996 F. Supp. 1451, 1461 (M.D. Fla. 1998). "The factors constituting notice, employee fitness, the type of action reasonably required of the employer[,]" and "the negligence of an employer's acts or omissions upon actual or constructive notice" are questions of fact that will "vary with the circumstances of each case." *Garcia v. Duffy*, 492 So. 2d 435, 441 (Fla. 2d DCA 1986). But, to survive a motion to dismiss, a plaintiff must plead sufficient facts to establish that the employer owed and breached a duty to the injured person, which caused the injury. *See id.* at 439; *see also Roberson v. Duval Cty. Sch. Bd.*, 618 So. 2d 360, 362 (Fla. 1st DCA 1993). Negligent supervision is the same cause of action as negligent retention. *See Dep't. of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005) ("Negligent supervision

occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharge, or reassignment.").

This Court finds that Plaintiffs have failed to adequately allege a claim against the County and City for negligent retention or supervision of the Individual Defendants. Plaintiffs allege that the City and County "breached [their] duty and negligently failed to monitor the actions, inactions, and overall performance of [the Individual Defendants] . . . when it became aware of their actions in relation to [Hamilton] and Plaintiffs." Dkt. 116 at 17; *see also* Dkt. 98 ¶¶ 296, 308, 323 & 335.  These claims hinge on the allegation that Hamilton's death put them on notice about problems with the Individual Defendants, not that anything put them on notice before Hamilton's death. Plaintiffs must point to something before Hamilton's death to show that the City and County's retention of the Individual Defendants was negligent. Plaintiffs' allegations are insufficient to state a plausible claim for negligent retention or supervision. So Counts 30, 32, 34, and 36 must be dismissed.

Finally, Defendants argue that Plaintiffs' claims for negligent training fail to state a claim and are barred by sovereign immunity. "Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the

14

negligent training of its employees and agents." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) (citing *McFarland & Son, Inc. v. Basel*, 727 So. 2d 266 (Fla. 5th DCA 1999)). To survive a motion to dismiss, Plaintiffs must adequately plead the County and City were negligent in the "implementation or operation of [a] training program." *Id.* at 1266. Claims that merely challenge "policy decisions regarding what to include in the training" are barred by sovereign immunity. *Id.*

Plaintiffs allege that the City and County each "breached [their] duty by negligently implementing or operating [their] training programs with regard to [their] employees/agents involved in the delivery of emergency medical services and/or in the supervision of other employees who in turn delivered such services . . . by delivering no training at all." Dkt. 116 at 17; *see also* Dkt. 98 ¶¶ 302 & 329. This Court finds that the Second Amended Complaint appears to be directed at the alleged failure to implement or conduct training—something not protected by sovereign immunity—rather than content of the training—something protected by sovereign immunity. At this stage in the litigation, this claim is sufficient and not barred by sovereign immunity. Counts 31 and 35 may proceed.

4. Breach of Contract Claims (Counts 37 and 38)

Defendants move to dismiss Plaintiffs' claims against the County and City for breach of contract (Counts 37 and 38, respectively). Plaintiffs' breach of

contract claims are based on the idea that Hamilton was an intended third-party beneficiary of contracts breached by the City and County.

"Under Florida law, a third party may enforce an agreement between others only if [the third party] is an intended beneficiary, not an incidental beneficiary, of that agreement." *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1441 (11th Cir. 1996). To be an intended beneficiary the parties, or the contract itself, must express "an intent to primarily and directly benefit the third party." *Id.* (citation omitted). Though, the third party need not be explicitly named. *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 812 (Fla. 3d DCA 1985). However, the third party must be part of a "limited class" of intended beneficiaries. *Id.*

Plaintiffs allege Defendants breached a contract "between Defendants City and County for medical care and services to [Hamilton]." Dkt. 98 ¶ 343. Plaintiffs assert that Hamilton was an intended third-party beneficiary of this contract to provide medical care and services. *Id.* But since Plaintiffs do not allege—nor does it seem likely—that Hamilton was explicitly named in the contract as an intended third-party beneficiary, Plaintiffs must adequately allege that Hamilton was part of a limited class of intended beneficiaries.

Even in the light most favorable to the Plaintiffs, their allegations are based on Hamilton's status as a member of the general public receiving emergency

medical services. This is not a limited class of intended beneficiaries. *See Btesh v. City of Maitland, Fla.*, No. 6:10-CV-71-ORL-19DAB, 2011 WL 3269647, at *41 (M.D. Fla. July 29, 2011) ("Membership in a class tantamount to the general public is not sufficiently limited to vest a person with the status of an intended, as opposed to incidental beneficiary, of a public contract."); *see, e.g.*, *Haynes v. Dep't of Lottery*, 630 So. 2d 1177, 1180 (Fla. 1st DCA 1994). Based on these allegations, Plaintiffs cannot state a claim for breach of contract against the City or County. Counts 37 and 38 are dismissed.

    5.   <u>Deliberate Indifference Claims (Counts 13, 14, 15, 16, 17, and 18)</u>

       Plaintiffs argue that Defendants were deliberately indifferent to Hamilton's medical needs under the Fourth and Fourteenth Amendments of the United States Constitution and under Article 1, Section 12, of the Florida Constitution. Dkt. 98 ¶¶ 106, 119, 132, 145, 158, 171. Defendants argue that Plaintiffs cannot state a cause of action for deliberate indifference under these facts, Plaintiffs failed to plead an adequate custom or policy to create liability for the City and County, and the Individual Defendants are entitled to qualified immunity from these claims.

    *a) Merits of the Claims Against the Individual Defendants*

       Plaintiffs base these Counts on claims of deliberate indifference by the Individual Defendants. Generally, a claim for deliberate indifference requires that the plaintiff had a serious medical need, the defendants were deliberately

indifferent to that need, and plaintiff's injury was caused by the defendants' deliberate indifference. *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). To show deliberate indifference the plaintiff must allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Id.*

And, for a non-custodial situation, a plaintiff must show "conduct by a government actor [that] can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). Here, Hamilton was not in state custody so Plaintiffs must show that actions by the Individual Defendants were "arbitrary or conscience shocking in a constitutional sense." *Id.*

The "arbitrary or conscience shocking" standard is narrowly interpreted and applied. *White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999). This means negligence is not enough. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Though, what does constitute "arbitrary and conscience shocking" conduct is necessarily fact dependent because "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Id.* at 850.

This Court finds *Waldron v. Spicher*, No. 5:16-CV-658-OC-32PRL, 2017 WL 3972464 (M.D. Fla. Aug. 11, 2017), report and recommendation adopted, 2017 WL 3922946 (M.D. Fla. Sept. 7, 2017), and *Olson v. Barrett*, No. 6:13-CV-

1886-ORL, 2015 WL 1277933 (M.D. Fla. Mar. 20, 2015), instructive. In *Waldron*, police responded to an emergency call reporting an attempted suicide where a young man hung himself from a tree. 2017 WL 3972464, at *1. The young man was almost immediately found by family members and a neighbor who cut him down and began administering CPR. *Id.* But when a sheriff's deputy arrived on the scene, he made the person performing CPR stop, told incoming emergency medical services not to rush, and even blocked paramedics from reaching the young man when they eventually arrived. *Id.* at *1–2. When the paramedics did reach the young man, they resumed CPR and noticed life signs; but, he died in the hospital a week later. *Id.* at *2. The young man's estate brought a claim for the deputy's medical deliberate indifference and, at the motion to dismiss stage, that district court found that the complaint stated a plausible claim. *Id.* at *6.

Similarly, in *Olson*, police deputies went to a woman's home to perform a welfare check after reports she was distraught and suicidal after losing her job. 2015 WL 1277933 at *1–3. Police instructed the woman to go, unaccompanied, into her home and get her driver's license. *Id.* at *3. Moments later, she shot herself in the chest. *Id.* No officers provided medical care, the officers refused the help of a neighbor, and even canceled a request for further emergency personnel. *Id.* Paramedics arrived nine minutes after the gunshot, but were too late to save the woman's life. *Id.* at *4. So, like in *Waldron*, her estate brought a claim for medical

19

deliberate indifference. The district court found that the complaint stated a plausible claim for medical deliberate indifference based on the officers' failure to "undertake any lifesaving actions" in the nine minutes that the woman laid dying in front of police without receiving any medical treatment. *Id.* at *9–11.

Plaintiffs allegations here are like those in *Waldron* and *Olson*. Hamilton suffered a heart attack and Plaintiffs called for emergency medical services. Dkt. 98 ¶ 12. Emergency medical personnel (i.e., the Individual Defendants) promptly reached Hamilton, but within five minutes pronounced him dead. *Id.* ¶¶ 14, 15 & 17. At no point during this short time on the scene did any of the Individual Defendants attempt to or actually administer medical care. *Id.* ¶ 17. This is despite the allegation by Plaintiffs that Hamilton was heard, alive, in the background of the 911 call less than ten minutes before the Individual Defendants arrived. *Id.* ¶ 14.

In sum, Plaintiffs have pled that Hamilton had a heart attack, the Individual Defendants knew this presented a serious medical risk, disregarded that risk, failed to provide even cursory medical care, and because of that Hamilton died. Thus, Plaintiffs have made plausible claims that the Individual Defendants acted with deliberate indifference to Hamilton's medical needs and those actions, as pled, shock the conscience. While the facts may play out differently in discovery, these Counts (15, 16, 17, and 18) will not be dismissed at this stage on this point.

*b) Qualified Immunity*

20

The Defendants also argue that the Individual Defendants are entitled to qualified immunity from Plaintiffs' claims. It is well established that government agents are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The issue of qualified immunity is a legal question that should be decided as early as possible in the case. *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* It is undisputed here that Individual Defendants had discretionary authority at the time of their alleged actions; they acted while performing their official duties. *See Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (A government official acts within [their] discretionary authority if the actions were (1) "undertaken pursuant to the performance of [their] duties" and (2) "within the scope of [their] authority.") So the burden shifts to the Plaintiffs.

21

Plaintiffs must make a two-part showing. First, Plaintiffs must show that the facts of the case make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007). Second, Plaintiffs must show that the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson*, 555 U.S at 232. As with all issues at the motion to dismiss stage, this Court looks at all facts in the light most favorable to the Plaintiffs. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

As discussed above, taking the facts as alleged, Plaintiffs have made plausible claims that the Individual Defendants acted with deliberate indifference to Hamilton's medical needs and those actions shock the conscience. This is sufficient to make a case for a violation of a constitutional right. The Court next must address whether the constitutional right that the Individual Defendants allegedly violated was clearly established on the date of the incident so that it would have been reasonably clear that their conduct was unlawful. This Court concludes it was.

A plaintiff can show that a constitutional right was established by showing that: (1) a "materially similar case has already been decided, giving notice to the police," (2) a "broader, clearly established principle should control the novel facts in th[e] situation," or (3) the "case fits within the exception of conduct which so

obviously violates the constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (internal citations omitted). The primary concern in finding that a law is clearly established is that the Defendants must have had "fair warning" that their conduct violated a clearly established constitutional right. *McClish v. Nugent*, 483 F.3d 1231,1248 (11th Cir. 2007).

Neither party has located a binding case that is factually similar to the instant case. But, after considering the facts as alleged by Plaintiffs, the conduct by the Individual Defendants violated a clearly established constitutional right. As was the case in *Olson* and *Waldron*, the Individual Defendants "should not have needed case law" to know that Hamilton was at risk of losing his life and needed immediate medical attention. *See Olson*, 2015 WL 1277933 at *12; *Waldron*, 2017 WL 3972464 at *8; *see also Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 122 (2002) ("Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem."). The Individual Defendants were trained emergency medical professionals who arrived to the scene of Hamilton's heart attack within minutes of Hamilton being

conscious. The Individual Defendants were the only ones on the scene who could have reasonably provided Hamilton with basic emergency medical care and yet did nothing. Thus, the Individual Defendants, at least at this stage of the litigation, are not entitled to qualified immunity.

   c) *Merits of the Claims Against the City and County*

Defendants argue that Plaintiffs have failed to state a claim against the City and County because they have failed to adequately allege a custom or policy that caused Hamilton's death. A local government body can only be held liable for violating individual constitutional rights "when execution of a government's policy or custom . . . inflicts the injury[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiffs have "the burden to show that a deprivation of constitutional rights occurred as a result of official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice so permanent and well-settled as to constitute a custom; or (3) an act or decision of a municipal official with final policy-making authority. *Cuesta v. Sch. Bd. of Miami–Dade Cty.*, 285 F.3d 962, 966–68 (11th Cir. 2002).

Plaintiffs' Second Amended Complaint does not allege that any pattern, practice, or custom of the City or County led to Hamilton's death. Plaintiffs instead allege that the Individual Defendants "made abhorrent decisions about

24

[Hamilton]'s medical care or lack thereof, because there was deliberate indifference in the training of medical personnel and/or first responders, and/or because [City and County] ratified the actions of the final policymakers and/or others within its control and failed to take action against them and/or to ensure the proper medical care after notice." Dkt. 98 ¶¶ 116 & 129. Any reference to a policy or custom here is too vague and conclusory to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"). So Counts 13 and 14 must be dismissed.

6. Negligence and Professional Negligence Claims (Counts 21, 22, 23, 24, 25, 26, 27, and 28)

Plaintiffs bring claims for negligence against the City (Count 23) and County (Count 21), and claims for professional negligence against all the Defendants (Counts 22, 24, 25, 26, 27, and 28). Defendants argue that the Good Samaritan Act precludes claims for negligence against the City and County, Plaintiffs have failed to comply with necessary pre-suit requirements for the "Professional Negligence" Counts, and the Good Samaritan Act precludes suit against the Individual Defendants. The Court will address each of these in turn.

First the Good Samaritan Act does not grant immunity to the City or County. While, the Good Samaritan Act would protect the Individual Defendants acting

with mere negligence it does not protect the City or County from actions alleging negligence. In fact, the City and County have waived their sovereign immunity for actions based on negligence by their employees acting within the scope of their duties. Fla. Stat. § 768.28(9)(a). Plaintiffs' negligence counts against the City (Count 23 & 24) and County (Count 21 & 22) may proceed.

Second, Plaintiffs have complied with all necessary pre-suit requirements for the "Professional Negligence" claims. As all the Parties seem to acknowledge, Plaintiffs' claims for "Professional Negligence" are really medical malpractice claims. *See R.W. v. Armor Corr. Health Servs., Inc.*, 830 F. Supp. 2d 1295, 1303 (M.D. Fla. 2011). ("Courts have found claims to sound in medical malpractice and held compliance with Chapter 766 pre-suit requirements necessary where the defendant's act or refusal to act was part and parcel of the claimant's overall medical care."). Florida law requires that, at least 90 days before filing any claim arising from medical malpractice, a plaintiff must investigate the claim and send the defendant a notice of intent to sue. Fla. Stat. § 766.106. Defendants allege that Plaintiffs did not comply with these requirements.

And this may have been true initially. When Plaintiffs filed the initial complaint in state court, they had not complied with the pre-suit requirements. But the remedy for failure to comply with these requirements is dismissal with leave to amend if the statutory period for initiating suit has not "run before the plaintiff

attempts to fulfill the presuit notice or screening requirements." *S. Neurological Assocs., P.A. v. Fine*, 591 So. 2d 252, 255 (Fla. 4th DCA 1991).

Here, Plaintiffs' initial Complaint was filed on May 3, 2018 in state court. Dkt. 1. On Jun. 22, 2018, Plaintiffs petitioned to extend the statute of limitations by 90 days with the state court. Dkt. 21; Fla. Stat. § 766.104(2) ("Upon petition to the clerk of the court where the suit will be filed . . . an automatic 90-day extension of the statute of limitations shall be granted."). On September 7, 2018, within that 90-day period, Plaintiffs provided the proper pre-suit notice to Defendants. Dkt. 13-1. This Court dismissed Plaintiffs' First Amended Complaint on December 19, 2019. Dkt. 90. Plaintiff filed a Second Amended Complaint on January 16, 2020. Dkt. 50. Meaning that, at the time of filing the Second Amended Complaint, Plaintiffs had complied with the pre-suit notice requirement. *See* Dkt. 13-1. Thus, the Court finds that Plaintiffs have satisfied the pre-suit notice requirements of Fla. Stat. § 766.106(2). *See, e.g.*, *Bobbin v. Corizon Health, Inc.*, No. 2:14-CV-158-FTM, 2015 WL 4751192, at *4 (M.D. Fla. Aug. 11, 2015).

Finally, the Good Samaritan Act protects the Individual Defendants from Plaintiffs' "Professional Negligence" Counts. As noted above:

> Any healthcare provider . . . providing emergency services . . . shall not be held liable for any civil damages as a result of such medical care or treatment unless such damages result from providing, or failing to provide, medical care or treatment under circumstances demonstrating

> a reckless disregard for the consequences so as to affect the life or health of another."

Fla. Stat. § 768.13(2)(b)(1). In short, the Good Samaritan Act protects emergency healthcare providers from liability for acts up to "reckless disregard" including negligence. *Id.*

Each of the Individual Defendants were acting as healthcare providers and were providing emergency services to Hamilton. In each of the Professional Negligence Counts against the Individual Defendants Plaintiffs allege that the Individual Defendants were negligent. Dkt. 98 ¶ 245, 255, 265, 275. Florida's Good Samaritan Act protects the Individual Defendants from claims of negligence. Fla. Stat. § 768.13(2)(b)(1). So these Counts (Counts 25, 26, 27, and 28) must be dismissed.

7. Conspiracy Claims (Counts 19 and 20)

Finally, Defendants move to dismiss Plaintiffs' claims for civil conspiracy (Count 19) and conspiracy to violate Hamilton's Fourth and Fourteenth constitutional rights (Count 20). Defendants argue that Plaintiffs are unable to state claims for either Count because there is no underlying wrong.

Under Florida law, a civil conspiracy is: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in furtherance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v.*

28

*Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). And "[a]n actionable conspiracy requires an actionable underlying tort or wrong." *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993). Plaintiffs claim that the Individual Defendants conspired to be deliberately indifferent to Hamilton's "serious medical needs, and then to conceal such actions/inactions." Dkt. 98 ¶ 195. Defendants argue that there is no underlying wrong here.

Plaintiffs are really alleging two separate conspiracies. One is that the individual Defendants conspired to cause Hamilton's death. The other is that the individual Defendants conspired to conceal their alleged wrongdoing. Plaintiffs have alleged facts about underlying wrongs for both conspiracies. First, as discussed in greater detail above, Plaintiffs have adequately alleged that the Individual Defendants are liable for the wrongful death of Hamilton. Second, Plaintiffs have alleged that the Individual Defendants included untruthful information about the quality of medical care given to Hamilton information in official reports about Hamilton's death. *See* Dkt. 98 ¶¶ 21–44 This is enough at this stage to support allegation of a conspiracy to conceal the circumstances of Hamilton's death. So this Count (Count 19) is sufficiently pled.

For the claim of conspiracy to violate Hamilton's constitutional right to be free from deliberate indifference, Defendants argue that there can be no conspiracy

without an underlying constitutional violation. Defendants contend that Plaintiffs'

underlying constitutional violations are insufficient so the conspiracy claim is too.

But, as noted above, Plaintiffs have, at least at this stage, stated a sufficient claim

for a constitutional violation by the Individual Defendants. So this claim (Count

20) will be permitted to move forward.

### Conclusion

The Court grants in part and denies in part Defendants' Motions to Dismiss.

Dkts. 107, 108, 109, & 110. Counts 13, 14, 25, 26, 27, 28, 29, 30, 32, 33, 34, 36, 37,

and 38 are dismissed without prejudice. The Court denies the motions to dismiss for

the remaining counts. If Plaintiffs are able to replead any of the dismissed Counts,

they may file a third amended complaint within twenty (20) days of the date of this

Order consistent with the rulings herein.

**DONE AND ORDERED** at Tampa, Florida, on May 8, 2020.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record